UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00206-FDW-DSC

| | |
|---|---|
| ALACRITY RENOVATION SERVICES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> STANTON F. LONG; JAMES DAVID GIBBS; ALACRITY SERVICES, LLC; COTERMINUS SOLUTIONS, LLC; GENESIS SOLUTIONS DESIGN, LLC; GIBBS & LONG, LLC; AND KLIPSPRINGER HOLDINGS, INC., <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss Complaint for Declaratory Judgment" (Doc. No. 10) and Plaintiff Alacrity Renovation Services, LLC's "Motion to Enjoin Prosecution of Later-Filed Action" (Doc. No. 13). Defendants, through counsel, move the court for an order dismissing the claims against them for lack of personal jurisdiction over each one of them and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, through counsel, moves the court to enjoin Defendants from prosecuting their similar, later-filed declaratory judgment action currently pending in Oregon federal court.

Having reviewed and considered the written arguments, the record, and the applicable authority, for the reasons set forth below, Defendant's Motion to Dismiss Complaint for Declaratory Judgment is GRANTED, and Plaintiff's Motion to Enjoin Prosecution of Later-Filed Action is DISMISSED as moot.

1

# I. BACKGROUND

*A. The Parties*

Plaintiff Alacrity Renovation Services, LLC, is a Delaware Limited Liability Company.[1] (Doc. No. 1, 2). Plaintiff is "a property casualty claim solutions company that works with independent contractors to provide mitigation and construction services for persons and companies suffering property damage." Id. Plaintiff's sole member is Alacrity Home Services, LLC ("AHS"), whose sole member is Lowe's Home Centers, LLC, whose sole member is Lowe's Companies, Inc., a North Carolina corporation. Id. As such, Plaintiff considers itself to be a citizen of North Carolina. (Doc. No. 12, 2). Meanwhile, Defendants allege that Plaintiff has its principal place of business in Eugene, Oregon. (Doc. No. 11, 10).

Defendants are Stanton F. Long; J. David Gibbs; Alacrity Services, LLC ("Alacrity Services"); Coterminus Solutions, LLC ("Coterminus"); Genesis Solutions Design LLC ("Genesis"); Gibbs & Long, LLC; and Klipspringer Holdings, Inc. ("Klipspringer"). (Doc. No. 1, 1). According to the complaint, "Defendants and their affiliated companies were the previous owners of [Plaintiff] ARS, but they sold their interests in ARS to AHS, an affiliate of Lowe's." (Doc. No. 13, 2). Defendant Stanton F. Long is an individual resident of Eugene, Oregon. (Doc. No. 1, 2). Defendant J. David Gibbs is an individual resident of Brentwood, Tennessee. Id. Plaintiff alleges "Long and Gibbs have sole ownership and control of the remaining defendants and purport to speak for all defendants." (Doc. No. 1, 2). Defendants Alacrity Services, Coterminus, Genesis, and Gibbs & Long are Delaware limited liability companies. (Doc. No. 1, 3). Defendant Klipspringer is a Delaware corporation that dissolved on January 8, 2016; Plaintiff

---

[1] The following is a summary of the factual allegations as stated in the parties' motion papers, supporting legal briefs, and relevant pleading allegations.

alleges that Klipspringer's principal place of business was in either Brentwood, Tennessee, or Eugene, Oregon. Id.

The parties agree that, at the time service of process was completed, neither of the individual defendants were present in North Carolina or domiciled in North Carolina. (Doc. No. 1, 3; Doc. No. 11, 8). The parties also agree that at that time, the entity defendants were not domestic corporations in North Carolina and did not have their principal places of business in North Carolina. (Doc. No. 1, 3; Doc. No. 11, 8). Defendants further allege "none of the defendants had or have any significant or long-term presence in North Carolina: No defendant has ever maintained offices, had employees, or owned property in North Carolina." (Doc. No. 11, 10).

*B. The Contribution Agreement*

On March 20, 2013, Defendants entered into a Contribution Agreement with AHS, under which "Defendants contributed certain assets to [ARS] and AHS contributed cash that was then distributed to [ ] Defendants." (Doc. No. 1, 4). Defendants allege the negotiations that resulted in the Contribution Agreement were initiated by Plaintiff and not by Defendants. (Doc. No. 11, 9-10). Defendants further allege the parties conducted no face-to-face negotiations in North Carolina, and Defendants conducted all telephonic or electronic negotiations regarding the Contribution Agreement from outside North Carolina. (Doc. No. 11, 10). Plaintiff alleges AHS negotiated the Contribution Agreement by telephone from its offices in North Carolina, and that Defendants knew AHS was negotiating in North Carolina and would pay AHS's obligations under the agreement from there. (Doc. No. 12, 2). Plaintiff also alleges "there were numerous *substantive* communications between Defendants and representatives of AHS in North Carolina to consummate the multi-million dollar Contribution Agreement." (Doc. No. 12, 7) (emphasis in original).

Section 3.01 of the Contribution Agreement specifies that closing was to occur at a specific date and time at AHS's offices in North Carolina. (Doc. No. 12, 2). AHS, Plaintiff's sole member, accordingly executed the Contribution Agreement in North Carolina. (Doc. No. 11, 6). Defendants allege that one of them executed the Contribution Agreement in Oregon or California, and that the other of them executed the Contribution Agreement in Tennessee. (Doc. No. 11, 10).

According to the complaint, "the Contribution Agreement . . . governs the rights and liabilities of the parties to that agreement." (Doc. No. 1, 4). The parties agree the Contribution Agreement "called for the purchase and sale of assets from Defendants in Oregon, to an entity owned by Plaintiff and operating in Oregon." (Doc. No. 1; Doc. No. 14, 11). Defendants claim that as a result, the Contribution Agreement "did not call for any of the Defendants to conduct business in North Carolina." (Doc. No. 11, 10). Section 10.02 of the Contribution Agreement allegedly states "the Defendants send all notices, requests, consents, claims, demands, waivers and other communications related to the Contribution Agreement to AHS's offices in North Carolina." (Doc. No 12, 2-3). The parties agree the law of the State of Delaware governs the Agreement. (Doc. No. 11, 10; Doc. No. 12, 2).

The Contribution Agreement also discusses Plaintiff's assumption of certain liabilities of the Defendants. (Doc. No. 1, 4). In this litigation, the parties contest and seek to establish the precise liabilities conveyed.

C. *Defendants' Request for Indemnity and Defense*

On February 12, 2016, Warren Erickson filed an action in the United States District Court for the Northern District of Georgia (the "Erickson Litigation"), claiming that he is entitled to part of the proceeds received by Defendants under the Contribution Agreement. (Doc. No. 1, 4). Erickson alleges a 2006 employment contract between him and Defendant Genesis gave him a

20% ownership in Genesis before the execution of the Contribution Agreement but Genesis breached his employment contract by refusing to pay him his interest in the company after the sale to AHS. (Doc. No. 1, 4–5). Defendants contend that they do not owe any of the proceeds from the Contribution Agreement to Erickson. Id. The parties dispute whether Erickson's claims are Assumed or Excluded Liabilities under the Contribution Agreement, which is the heart of the case before this Court. (Doc. No. 1, 4–5, 7–8).

On February 15, 2016, Defendants tendered the defense of the Erickson Litigation to Plaintiff's representative in North Carolina, claiming the litigation related to an assumed liability under the Contribution Agreement. (Doc. No. 1, 5). Plaintiff alleges Defendants supported their claim with "certain parol evidence—e.g., emails exchanged before execution of the March 2013 Contribution Agreement." (Doc. No. 13, 2–3). On February 18, 2016, Plaintiff's representative rejected Defendants' claim. Id. Plaintiff alleges this decision was made on the basis of "a plain reading of the relevant transactional documents and the materials provided by Long and Gibbs." (Doc. No. 13, 3). On April 7, 2016, Defendants repeated their request for defense and indemnification of the Erickson Litigation, and threatened to sue Plaintiff if it failed to comply. (Doc. No. 1, 6). Plaintiff's counsel requested additional time to review the matter. (Doc. No. 20, 3–4). On the last day of the specified extension, Plaintiff filed this action. Id. Plaintiff attributes this to the breakdown of negotiations between the parties, while Defendants consider it to be a bad-faith mirror-image of their threatened claim. (Doc. No. 12, 3; Doc. No. 20, 4).

*D. Procedural History*

On May 2, 2016, Plaintiff ARS filed this claim for declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, seeking judgment that it is not obligated to defend or indemnify Defendants from the claims asserted against them in the

Erickson Litigation. (Doc. No. 1, 1). Plaintiff asks this Court to determine whether the claims in the Erickson Litigation were among the liabilities assigned to Plaintiff under the Contribution Agreement. (Doc. No. 1, 2). Defendants move to dismiss Plaintiff's complaint, on the ground that the court lacks personal jurisdiction over them. (Doc. No. 10, 1–2).

Four days after Plaintiff filed this complaint, Defendants Long and Gibbs filed a similar complaint for Declaratory Judgment in the Circuit Court of the State of Oregon. (Doc. No. 12, 3). Plaintiff, as a co-defendant in that action, removed the matter to federal court on May 27, 2016. (Doc. No. 12, 4). On May 31, 2016, Plaintiff moved to dismiss that action under Rule 12(b)(3) of the Federal Rules of Civil Procedure and the first-to-file rule as recognized by the Ninth Circuit and the District of Oregon. (Doc. No. 13, 4). In this court, meanwhile, Plaintiff moves to enjoin prosecution of the Oregon action under the first-to-file rule. (Doc. No. 13).

## II.  STANDARD OF REVIEW

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, "when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating whether the plaintiff here has met this burden, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (quoting Combs, 886

F.2d at 676). Indeed, the plaintiff "need not present evidence in making a prima facie case to oppose a motion to dismiss," and "[m]ere allegations are sufficient" to establish personal jurisdiction at the pleading stage. Dowless v. Warren–Rupp Houdailles, Inc., 800 F.2d 1305, 1307–08 (4th Cir.1986).

To establish the court's exercise of personal jurisdiction over a non-resident defendant, the plaintiff's allegations must establish that two conditions have been satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

North Carolina's long-arm statute provides for personal jurisdiction over any validly-served defendant who "is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise," or whose "act or omission" gave rise to an "action claiming injury to person or property within or without this State." N.C. Gen. Stat. Ann. §§ 1-75.4(1)(d), 1-75.4(3). North Carolina law holds that these provisions "permit[ ] the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." Universal Leather, 773 F.3d at 558; see also Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977). Thus, since the long-arm statute "extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). The court must consider "the single question whether [plaintiff] has made a prima facie showing that [defendants] had sufficient contacts with North Carolina to satisfy constitutional due process."

Universal Leather, 773 F.3d at 559; see also A.R. Haire, Inc. v. St. Denis, 625 S.E.2d 894, 899 (N.C. App. 2006).

The Due Process Clause permits the court to exercise personal jurisdiction over a nonresident defendant through either of two independent avenues. "The first path is specific jurisdiction, which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit. The second path is general jurisdiction, which requires a more demanding showing of continuous and systematic activities in the forum state." Universal Leather, 773 F.3d at 559 (citations and internal quotation marks omitted); see also Tire Eng'g, 682 F.3d at 301. Plaintiff only argues the court possesses specific jurisdiction over defendants, so our constitutional analysis is limited to that path.

The Supreme Court has held that a District Court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). The test relies on "the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Id. On the other hand, it aims to protect defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Accordingly, specific personal jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n. 15 (4th Cir. 2009); see also World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 310, 317–18 (1945). The "minimum contacts" analysis

"looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122–23 (2014).

In assessing a defendant's contacts with the forum state, the court does "more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state." Tire Eng'g, 682 F.3d at 301. For example, the defendant's conduct "must be directed at the forum state in more than a random, fortuitous, or attenuated way." CFA Inst., 551 F.3d at 293 (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)). Rather, it must "amount to a surrogate for presence and thus render the exercise of sovereignty just." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277–78 (4th Cir. 2009) (quoting ESAB Group, 126 F.3d at 623). The defendant's actions must give him "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign." Burger King, 471 U.S. at 472 (internal quotation marks omitted).

The Fourth Circuit has synthesized these various considerations into a three-part test for the due process requirements of exercising specific personal jurisdiction. This Court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

To establish specific personal jurisdiction, constitutional due process first requires that the defendant have "purposefully availed itself of the privilege of conducting activities in the forum state." Tire Eng'g, 682 F.2d at 302. The purposeful-availment test is applied flexibly on a case-by-case basis and cannot be applied mechanically. See Consulting Engineers, 561 F.3d at 278;

Tire Eng'g, 682 F.3d at 302; Int'l Shoe, 326 U.S. at 319; Kulko v. Superior Court, 436 U.S. 84, 92 (1978). Rather, the court considers "various nonexclusive factors in seeking to resolve whether a defendant has engaged in [ ] purposeful availment." Consulting Engineers, 561 F.3d at 278. The Fourth Circuit has articulated a nonexclusive list of such factors for consideration in the business context:

> (1) Whether the defendant maintains offices or agents in the forum state,
> (2) Whether the defendant owns property in the forum state,
> (3) Whether the defendant reached into the forum state to solicit or initiate business,
> (4) Whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
> (5) Whether the parties contractually agreed that the law of the forum state would govern disputes,
> (6) Whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
> (7) The nature, quality and extent of the parties' communications about the business being transacted, and
> (8) Whether the performance of contractual duties was to occur within the forum.

Id. (citations omitted). If the analysis of such factors suggests that "the defendant has availed itself of the privilege of conducting business in the forum, specific jurisdiction exists." Id. In general, these factors support a finding of purposeful availment where the defendant "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute," but not where "the locus of the parties' interaction was overwhelmingly abroad." Universal Leather, 773 F.3d at 560 (quoting Tire Eng'g, 682 F.3d at 302). If the court finds that "the plaintiff has satisfied this first prong of the test for specific jurisdiction," it moves on to consider the test's second and third prongs. Consulting Engineers, 561 F.3d at 278.

The second prong of the constitutional test for specific jurisdiction requires that the defendant's contacts with the forum state form the basis of the suit. See Burger King, 471 U.S. at

472; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). This analysis is typically straightforward. "Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." Tire Eng'g, 682 F.3d at 303 (internal quotation marks omitted).

Finally, the third prong requires that the exercise of personal jurisdiction be constitutionally reasonable. This "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Engineers, 561 F.3d at 279. Such factors include:

> (1) The burden on the defendant of litigating in the forum;
> (2) The interest of the forum state in adjudicating the dispute;
> (3) The plaintiff's interest in obtaining convenient and effective relief;
> (4) The shared interest of the states in obtaining efficient resolution of disputes; and
> (5) The interests of the states in furthering substantive social policies.

Id. (citing Burger King, 471 U.S. at 477; World–Wide Volkswagen, 444 U.S. at 292). Accordingly, the court seeks to protect the plaintiff's and the forum state's "substantial interest" in resolving the grievance at hand, while ensuring that "litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.' " Tire Eng'g, 682 F.3d at 303 (quoting Nolan, 259 F.3d at 217). Based on such factors, the court determines whether the forum at hand is "a relatively sensible choice in terms of promoting judicial efficiency." Nolan, 259 F.3d at 218.

### III.  DISCUSSION

*A. North Carolina's Long-Arm Statute*

Plaintiff has not indicated the section of North Carolina's long-arm statute on which it bases its theory of personal jurisdiction. (Doc. No. 12, p. 6). Defendants suggest that plaintiff's allegations implicate N.C. Gen. Stat. Ann. § 1-75.4(1)(d), which permits jurisdiction over

11

defendants "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." (Doc. No. 11, p. 7). Regardless, the parties agree that North Carolina law permits the exercise of personal jurisdiction to the full extent permissible under the federal Due Process Clause. (Doc. No. 11, p. 7; Doc. No. 12, p. 6). Accordingly, it is unnecessary to determine whether the North Carolina long-arm statute reaches the Defendants in this action. Instead, this Court simply assesses whether Plaintiff has made a prima facie showing that Defendants had sufficient contacts with North Carolina to satisfy constitutional due process. See Universal Leather, 773 F.3d at 558; see also DP Envtl. Servs., Inc. v. Bertlesen, 834 F. Supp. 162, 164 (M.D.N.C. 1993).

   *B. The Consulting Engineers Factors and Purposeful Availment*

In assessing whether the exercise of specific personal jurisdiction is constitutionally permissible, the court first considers "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State." Consulting Engineers, 561 F.3d at 278. This Court's analysis is guided by the purposeful availment factors articulated by the Fourth Circuit in Consulting Engineers. See id. at 279. The first six of these factors indisputably weigh against a finding that Defendants purposefully availed themselves of conducting business in the forum state. Defendants do not maintain offices, employ personnel, or own property in North Carolina. (Doc. No. 11, 10). The business relationship between the parties was initiated by Plaintiff, not by Defendants. (Doc. No. 11, 9-10). Defendants operated and held the relevant assets in Oregon, and conducted no business activities of their own in North Carolina. (Doc. No. 1; Doc. No. 11, 10; Doc. No. 14, 11). The parties specified that the agreement would be governed by Delaware law, not by North Carolina law. (Doc. No. 11, 10; Doc. No. 12, 2). Finally, the parties conducted no face-to-face negotiations in North Carolina. (Doc. No. 11, 10). The parties conducted some

12

telephonic and electronic negotiations, during which Plaintiff was in North Carolina but Defendants were not. (Doc. No. 11, 10; Doc. No. 12, 2). Plaintiff does not dispute any of these facts, so the court can only conclude that the first six of the Consulting Engineers factors strongly suggest that Defendants' contacts with North Carolina are insufficient to support the exercise of specific personal jurisdiction.

Even without support from those factors, purposeful availment can be established through "repeatedly reaching into [North Carolina] to transact business with [a] plaintiff, invoking the benefits and protections of [North Carolina] law." Tire Eng'g, 682 F.3d at 305 (quoting CFA Inst., 551 F.3d at 295). Plaintiff argues that despite their lack of physical presence in the forum state, Defendants have established sufficient minimum contacts in this way—both through their negotiations with Plaintiff prior to the execution of the Contribution Agreement, as per the seventh Consulting Engineers factor, and through their requirements for performance following the execution of the Contribution Agreement, as per the eighth Consulting Engineers factor.

*C. Defendants' Communications with Plaintiff*

Plaintiff alleges "there were numerous *substantive* communications between Defendants and representatives of AHS in North Carolina to consummate the multi-million dollar Contribution Agreement," and argues that this establishes minimum contacts under the seventh Consulting Engineers factor. (Doc. No. 12, p. 7) (emphasis in original). However, case law suggests that "in the absence of a contract that is substantially connected to this state . . . telephone calls and faxes to the state during negotiations do not create specific personal jurisdiction." Pan-Am. Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011); see CEM Corp. v. Personal Chemistry AB, 192 F. Supp. 2d 438, 442 (W.D.N.C. 2002), aff'd, 55 Fed. Appx. 621 (4th Cir. 2003). For example, in Tire Eng'g & Distribution, LLC v. Shandong Linglong

Rubber Co., the Fourth Circuit held that electronic and telephonic communications constituted sufficient contacts to support the exercise of personal jurisdiction because they involved "manipulation of [ ] blueprints and development of a production plan," thereby directly supporting the infringement of intellectual property rights in the forum state. 682 F.3d at 304–05. Thus, the communications themselves were "a critical part" of the legal claims at stake and created "a substantial nexus" between the forum state and the defendants' behavior. Id. In English & Smith v. Metzger, the parties' "telephone calls and written communications" established personal jurisdiction because they represented "a continuing relationship" through which the parties conducted the contested activities in the forum state. 901 F.2d 36, 37–40 (4th Cir. 1990); see also BeoCare Grp., Inc. v. Morrissey, 124 F. Supp. 3d 696, 704 (W.D.N.C. 2015).

To the contrary, in Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, the Fourth Circuit affirmed a refusal to exercise personal jurisdiction where the contract called for performance primarily outside the state, even though the relationship between the parties required some contact with the forum state. 229 F.3d 448, 452 (4th Cir. 2000). Likewise, in Consulting Engineers Corp. v. Geometric Ltd., the Fourth Circuit held that "an exchange of [ ] brief emails, several telephone conversations about [the agreement], and the exchange of the various drafts" did not constitute sufficient contacts to exercise personal jurisdiction when not supported by any physical presence or any contractual performance in the forum state. 561 F.3d at 281–82. District Courts in the Fourth Circuit have consistently held that even very extensive communications are not dispositive of the defendant's purposeful availment, unless the parties had an extensive, substantive, or continuing relationship that tied their behavior to the forum state. See Pennsylvania Wood, Inc. v. Martin, 3:13CV83-MU, 2013 WL 3935065 (W.D.N.C. July 30, 2013); Hirsch v. Johnson, 1:14CV332 JCC/TRJ, 2014 WL 2916748 (E.D. Va. June 26, 2014).

14

In this case, the communications between the parties did not create "a substantial nexus" between Defendants and North Carolina. Unlike English & Smith, the parties did not conduct a "continuing relationship" but rather negotiated for a single transaction. (Doc. No. 1; Doc. No. 14, p. 11). Rather, like in Consulting Engineers, Defendants had neither physical presence in North Carolina nor "any significant or long-term presence in North Carolina" at all. (Doc. No. 11, p. 10). As in Diamond Healthcare, the contemplated business transaction may have required some contact with Plaintiff's agents in North Carolina, but the performance of the contract overwhelmingly occurred outside North Carolina, as discussed below. (Doc. No. 1; Doc. No. 14, p. 11). Thus, the parties' negotiations were merely "an intermediate step serving to tie up . . . future consequences which themselves [were] the real object of the business transaction," which the Supreme Court considers to be non-dispositive of "whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479. Therefore, the parties' communications are insufficient to establish minimum contacts because they constitute "the defendant's contacts with persons who reside [in the forum state]," not "the defendant's contacts with the forum state itself." Walden v. Fiore, 134 S. Ct. 1115, 1122–23 (2014).

*D. Defendants' Performance of the Contract*

Plaintiff also alleges: (1) "all written communications to AHS were to be directed to Mooresville, North Carolina," (2) Defendants "sen[t] their demand for defense and indemnity to North Carolina, and [ ] (3) Defendants "received millions of dollars from a North Carolina company." (Doc. No. 12, pp. 7–8). Plaintiff argues these facts constitute "performance of duties" in North Carolina, establishing minimum contacts under the eighth Consulting Engineers factor. In Universal Leather, LLC v. Koro AR, S.A., the Fourth Circuit held that a major corporate transaction could serve as the basis for personal jurisdiction even without meeting Consulting

Engineers factors such as physical presence. 773 F.3d at 563. However, that holding relied on the finding that the transaction "gave rise to a two-year relationship between the parties that spanned a series of transactions and resulted in the sale of millions of dollars in goods," such that the defendant "engaged in a course of conduct that targeted the forum with its goods." Id. at 561–63 (internal quotation marks omitted). Similarly, in Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, the Fourth Circuit found purposeful availment where the defendant "deliberately entered a collaborative enterprise" that knowingly and deliberately aimed at producing content in North Carolina and disseminating it from there—thereby "engag[ing] in significant activities" within the forum state. 259 F.3d at 217.

Accordingly, on the other hand, purposeful availment is "lacking in cases in which the locus of the parties' interaction was overwhelmingly abroad." Tire Eng'g, 682 F.3d at 302. The Fourth Circuit has held that when the "work contemplated by the discussions" is performed outside the forum state, the defendant's contacts with the forum state are "simply too attenuated to justify the exercise of personal jurisdiction." Consulting Engineers, 561 F.3d at 280. In such cases, mere financial transactions with a party located in the forum state do not constitute "performance of contractual duties within the forum" sufficient to support personal jurisdiction. See Mountain Funding, LLC v. Wieder Jewelers, Inc., No. 3:10-CV-265-RJC-DCK, 2011 WL 1130888, at *6–7 (W.D.N.C. Jan. 13, 2011). Likewise, precedent suggests that "requesting a defense" is not necessarily "purposeful in a jurisdictional sense." See Hartford Cas. Ins. Co. v. JR Mktg., LLC, 511 F. Supp. 2d 644, 650–51 (E.D. Va. 2007).

In this case, the "performance of contractual duties" associated with the Contribution Agreement did not purposefully target North Carolina. The Contribution Agreement called for the purchase and sale of assets from Defendants in Oregon to an entity owned by Plaintiff and

16

operating in Oregon. (Doc. No. 1; Doc. No. 14, p. 11). As such, unlike Universal Leather, the contemplated products of the agreement here were understood to be entirely associated with Oregon. Furthermore, unlike Nolan, Defendants cannot be said to have "deliberately entered a collaborative enterprise" with North Carolina specifically. The only connection between Defendants and North Carolina is that ARS's parent company happens to be based in this State—which is not substantially relevant to the relationship between the parties. As in Consulting Engineers, the "work contemplated by the discussions" was almost entirely performed in Oregon, so Defendants' financial transactions with and request for legal defense from North Carolina are insufficient to establish purposeful availment of conducting business there.

E. *Defendants' Contacts with North Carolina*

Thus, all eight Consulting Engineers factors suggest that Defendants have insufficient contacts with North Carolina. Because these factors are not to be assessed mechanically, though, it is appropriate to broadly consider whether Defendants purposefully availed themselves of conducting business in North Carolina. "[T]he Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." LC Am., Inc. v. Nirvana Specialty Foods, Inc., No. 3:13-CV-625-RJC-DCK, 2014 WL 2586936, at *6 (W.D.N.C. Apr. 24, 2014). Other than the contract itself, Defendants have no connection with North Carolina and certainly do not have sufficient contacts with the state to be considered essentially physically present there.

Furthermore, Plaintiff has made no attempt to individually assess each defendant's contacts with North Carolina. See Calder v. Jones, 465 U.S. 783, 790 (1984). This is important because if this Court lacks personal jurisdiction over any of the parties, it would likely need to decline its discretionary jurisdiction over all of them under the Federal Declaratory Judgment Act. See

17

Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942). Declaratory judgments should not be applied to "try particular issues without settling the entire controversy." See Allied–General Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 (4th Cir. 1982); Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir.1992). Thus, Plaintiff also falls short of satisfying its burden because it relies on the Defendants' collective contacts instead of the individual contacts of each Defendant.

Therefore, Plaintiff has not met its burden of showing by a preponderance of the evidence that Defendant purposefully availed itself of the privilege of conducting activities in this State. Plaintiff has failed to satisfy the first prong of the specific jurisdiction test, so it is unnecessary to analyze the remaining prongs. See Consulting Engineers, 561 F.3d at 281 n.9. It is also unnecessary to assess Plaintiff's Motion to Enjoin Prosecution of Later-Filed Action. This Court cannot constitutionally exercise specific personal jurisdiction over Defendants, and the matter must be dismissed.

## IV. CONCLUSION

Construing all relevant pleadings in the light most favorable to Plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the Court, by applying the Fourth Circuit's three-part test for specific jurisdiction, finds it lacks personal jurisdiction over Defendants. Plaintiff has not met its burden of making a prima facie case that Defendants purposefully availed themselves of conducting business in North Carolina. The alleged contacts are simply too attenuated to be "tantamount to physical presence" in North Carolina.

For the foregoing reasons, Defendant's Motion to Dismiss Complaint for Declaratory Judgment (Doc. No. 10) is **GRANTED,** and Plaintiff's Motion to Enjoin Prosecution of Later-Filed Action (Doc. No. 13) is **DISMISSED** as moot.

**IT IS SO ORDERED.**

Signed: August 2, 2016

Frank D. Whitney
Chief United States District Judge